IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| MICHAEL WRISTON, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-03148-SRB |
| | ) | |
| JAMES ARNOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Benjamin Ramsey's Motion for Summary Judgment. (Doc. #60.) For the reasons set forth below, the motion is GRANTED.

**I. FACTUAL BACKGROUND**

For the purpose of resolving the pending motion, and unless otherwise indicated, the following facts are uncontroverted or deemed uncontroverted by the Court. Additional facts relevant to the parties' arguments are set forth in Section III.[1]

In January 2019, Plaintiff Michael Wriston ("Plaintiff") purchased a 2016 Ford Fusion (the "Vehicle") and financed the purchase through Santander Consumer USA, Inc. Plaintiff titled the Vehicle in his name and registered it with the State of Missouri. Plaintiff subsequently fell behind on the required payments.

On August 9, 2019, an individual driving a tow truck (the "repo man") arrived at Plaintiff's home in order to repossess the Vehicle. Plaintiff saw the tow truck and, at some point,

---

[1] Plaintiff has also filed a pending cross-Motion for Partial Summary Judgment as to Liability. (Doc. #62.) The parties' respective motions raise similar facts and arguments. The Court has reviewed all briefs and exhibits pertaining to both motions for summary judgment, and the rulings herein dispose of both motions. To provide context and/or where applicable, this Order contains uncontroverted facts included in Plaintiff's motion. Only those facts necessary to resolve the pending motions are discussed below, and those facts are simplified to the extent possible.

got into the driver's seat of the Vehicle to physically prevent the Vehicle from being repossessed. The repo man hooked the back of the Vehicle to the tow truck.

Around this time, patrol deputies Matthew Hersh ("Hersh") and Kelsey Whitcomb ("Whitcomb") arrived at the scene in response to a general disturbance call. Upon arrival, Hersh and Whitcomb saw the Vehicle attached to the tow truck with the back end of the Vehicle lifted into the air. Plaintiff and his wife told Hersh and Whitcomb they contested the repossession and that Plaintiff had gotten into the Vehicle prior to it being attached to the tow truck and lifted.

Hersh responded that the repo man could take the Vehicle if he presented an active repossession order because the Vehicle was already "hooked up." (Doc. #60, p. 2.)[2] Hersh asked the repo man for documentation and Hersh saw what "appeared to be an active repo order." (Doc. #60-8, p. 2.) Whitcomb asked Plaintiff what had happened and gave Plaintiff an opportunity to explain the situation. Plaintiff and his wife again claimed that they contested the repossession before the repo man had hooked up the Vehicle, and that this meant the repo man could not leave with it. Hersh explained that the deputies were only present to keep the peace, and that the repossession was complete once the Vehicle was hooked to the tow truck.

Defendant Benjamin Ramsey ("Ramsey"), a supervisory deputy, subsequently arrived at the scene. Ramsey decided to respond in order to help the newer deputies and because he knew that civil disputes can be complicated. Upon Ramsey's arrival, the Vehicle was still hooked to the tow truck with the back end of the Vehicle lifted into the air. Ramsey first spoke with the repo man and looked at his paperwork. Ramsey does not recall the specifics of the paperwork, but it "appeared to [him] to be a legitimate repossession." (Doc. #63-2, p. 10.) Ramsey then

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

spoke with Plaintiff, who again contested the repossession. However, Plaintiff admitted to Ramsey that he was behind on payments for the Vehicle.

Based on the information available to him, Ramsey determined the repo man had the right to take the Vehicle. Plaintiff remained in the Vehicle and repeated his objections to the repossession. Ramsey told Plaintiff that "this is not the time nor the place to protest" the repossession. (Doc. #71, p. 11.) Ramsey further told Plaintiff that:

> I assure you, banks and dealerships that sells cars, they know exactly when and where they can repossess. They know how they can do it. . . . So when they say repossess this car, they know that they are on legal grounds. Now you can feel free, I encourage you to protest it, take your bank that you didn't pay your money to, take them to court. I don't think you're going to win, but that's your right. You can do that. That is totally your right to do that.

(Doc. #71, pp. 13-14.)

Ramsey advised Plaintiff to get out of the Vehicle and that "we can lawfully order you out of this vehicle. If you choose not to, you'll go to jail for it." (Doc. #71, p. 12.) Plaintiff asked Ramsey whether his order was lawful, Ramsey responded yes, and Plaintiff exited the Vehicle. The repo man then drove off with the Vehicle. Plaintiff was not arrested or taken into custody. Plaintiff recorded his interaction with the officers, but this recording began only after Plaintiff had entered the Vehicle.[3]

On March 23, 2020, Plaintiff filed this lawsuit against Ramsey and other defendants. The only remaining claim in this case is Count III, which asserts an individual capacity claim against Ramsey under 42 U.S.C. § 1983. The § 1983 claim alleges that Ramsey actively assisted the repo man and deprived Plaintiff of his possessory rights to the Vehicle without due process of

---

[3] Both parties submitted the audio/video recording in support of their respective motions for summary judgment. The Court has viewed the recording.

law in violation of the Fourteenth Amendment. Plaintiff seeks compensatory and punitive damages, as well as his attorney fees.

Ramsey now moves for summary judgment under Federal Rule of Civil Procedure 56. Ramsey argues that summary judgment is warranted because Plaintiff failed to present sufficient evidence of state action as required under § 1983. In the alternative, Ramsey argues summary judgment should be entered because he is entitled to qualified immunity.[4] Plaintiff opposes the motion, and the parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*

---

[4] Ramsey also argues summary judgment is warranted because "Plaintiff cannot show violation of a possessory interest in the Vehicle subject to constitutional protection because . . . as between Plaintiff and the repossessor, Plaintiff did not have the right to possess the Vehicle." (Doc. #61, p. 7.) For purposes of this Order, the Court assumes that Plaintiff has shown a possessory interest sufficient to invoke the Fourteenth Amendment's protection of property rights.

### III. DISCUSSION

#### A. State Action Under § 1983

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of . . . property without due process of law." U.S. Const. amend. XIV. Under § 1983, a plaintiff may file suit against a state actor for violating these protections. 42 U.S.C. § 1983; *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) ("Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights."). To prevail on a § 1983 claim, a plaintiff must show [1] that he was deprived of a right secured by the Constitution and the laws of the United States and [2] that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

The color of state law requirement is referred to as state action. *See Neighborhood Enters., Inc. v. City of St. Louis*, 540 F.3d 882, 885 (8th Cir. 2008). When the alleged constitutional deprivation involves conduct by both a state actor and a private person, the record must show that the state actor "exercised coercion or significantly encouraged the conduct, not [that] the state has merely acquiesced in a private party's initiatives." *Moore v. Carpenter*, 404 F.3d 1043, 1046 (8th Cir. 2005). As relevant here, "[w]hen a police officer is involved in a private party's repossession of property, there is no state action if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." *Id.*

Here, Count III alleges that Ramsey "unlawfully deprived [Plaintiff] of his personal property without due process of law, without notice and an opportunity to be heard." (Doc. #1-1, p. 11.) In support, Plaintiff alleges that Ramsey's actions "were instrumental in the taking of

5

Plaintiff's vehicle including the threat of arrest in order to enable the repossession." (Doc. #1-1, p. 12.) Ramsey argues his involvement with the repossession did not rise to the level of affirmative assistance necessary to satisfy the state action requirement. Plaintiff argues Ramsey "took state action by telling [Plaintiff] the repossession was legal and threatening to arrest him if he did not exit the Vehicle and allow the repossessor to take the Vehicle." (Doc. #75, p. 25.) As explained below, the Court agrees with Ramsey.

To determine whether Ramsey's conduct constitutes state action, the Court finds instructive a case relied upon by both parties, *Moore v. Carpenter*, 404 F.3d 1043 (8th Cir. 2005). In *Carpenter*, Roger Moore ("Moore") bought a boat, motor, and trailer from Harry Jackson ("Jackson"). *Id.* at 1044. Moore agreed to make monthly installment payments and took possession of the items. *Id.* According to Jackson, Moore failed to make the payments. *Id.* Jackson sued Moore but the state court ruled in favor of Moore. *Id.*

Jackson then went to Moore's property to repossess the property himself. *Id.* at 1044-45. Moore's wife resisted and called the police. *Id.* at 1045. When the officers arrived, Jackson had already backed his van into Moore's driveway and had hitched the boat and trailer to his van or was preparing to do so. *Id.* Jackson told the officers that Moore was behind on his payments, but Moore produced the state court order which showed that he did not owe Jackson any money. *Id.*[5] The officers ran the license plate on the boat which showed Jackson held the title. *Id.* "To end the disturbance, the officers concluded Jackson should leave the premises." *Id.* "After charging Jackson with assault, property damage, and trespass, [the] officers . . . told Jackson to leave the premises." *Id.* Jackson did so and took the boat with him. *Id.*

---

[5] However, the state court order did not refer to a boat, motor, or trailer. *Id.*

6

Case 6:20-cv-03148-SRB   Document 82   Filed 10/12/21   Page 6 of 12

Moore then sued the police officers under § 1983, alleging they deprived him of property without due process by assisting Jackson. *Id.* To show state action, Moore contended in part that the officers told Jackson to hitch the boat to his van and leave the premises. *Id.* The officers argued the boat was already hitched to Jackson's van when they arrived at the scene. *Id.* The district court found the officers were entitled to qualified immunity and granted summary judgment in their favor. *Id.*

On appeal, the Eighth Circuit found that Moore's alleged possessory interest in the property "was protected against state action under the Fourteenth Amendment." *Id.* at 1046. The Eighth Circuit then examined whether the conduct of the officers constituted state action.[6] After considering "the totality of the circumstances," *Carpenter* found "the officers were not so involved in aiding the repossession that the deprivation of the boat is state action." *Id.* at 1046. First, "[t]he officers were not asked to accompany Jackson to ensure the repossession went smoothly and they did not arrive with him." *Id.* "Instead, they were summoned to a scene not of their making only to resolve a breach of the peace that was in progress." *Id.* Second, "[b]efore the officers arrived, Jackson had gained access to the boat and was already in the process of repossessing it." *Id.* Third, the "officers did not tell the Moores the repossession was legal or that they would be arrested if they interfered." *Id.* Under all these circumstances, *Carpenter* found the repossession would have occurred even absent the officer's assistance, and thus the state action requirement was lacking. *Id.*

Although not identical, the facts in this case are similar to those in *Carpenter*. As in *Carpenter*, the repo man and Ramsey did not travel together to Plaintiff's residence. The repo

---

[6] The Eighth Circuit examined the state action requirement as part of its qualified immunity analysis to determine whether "the deprivation of the boat [was] state action." *Id.* at 1046. The parties in this case separately brief the issues of state action and qualified immunity, and the Court follows that approach for purposes of consistency.

7

Case 6:20-cv-03148-SRB   Document 82   Filed 10/12/21   Page 7 of 12

man also did not ask Ramsey to accompany him to the residence. Ramsey responded to the scene only to help Hersh and Whitcomb resolve the disturbance. Before Ramsey arrived, the repo man was already in the process of repossessing the Vehicle. The Vehicle was hooked to the tow truck and the back of the Vehicle was lifted in the air. Finally, Ramsey did not restrain Plaintiff or take him into custody. Under *Carpenter*, these facts weigh against a finding of state action.

Plaintiff argues that *Carpenter* is not dispositive—and is supportive of his claim—because Ramsey took additional actions that were not present in *Carpenter*. Viewing the evidence in the light most favorable to Plaintiff, Ramsey told Plaintiff that the repossession was legal and that he would be arrested if he refused to leave the Vehicle. *See Carpenter*, 404 F.3d at 1046 (noting the absence of such facts).[7] Plaintiff argues these facts show Ramsey "affirmatively intervene[d] to aid the repossessor enough that the repossession would not have occurred without the officer's help." (Doc. #75, p. 25) (quoting *Carpenter*, 404 F.3d at 1046). However, the record shows that the repossession was complete or substantially complete because the Vehicle was already hooked and lifted in the air at the time Ramsey arrived. In addition, the record does not show that the repo man would have ceased the repossession absent Ramsey's involvement.[8] Although this case and *Carpenter* are not factually identical, they are similar enough to warrant the same conclusion.

In addition, *Carpenter* found a lack of state action even though Moore alleged the officers expressly told Jackson "to hook up the boat" and leave the premises. *Id.* at 1045. That

---

[7] Plaintiff contends that *Carpenter* held "state action occurs where the officer tells the plaintiff that the repossession is legal or that he will be arrested if he interferes." (Doc. #75, p. 23) (citing *Carpenter*, 404 F.3d at 1046). As stated above, *Carpenter* found such facts relevant but not dispositive as a matter of law. Under *Carpenter*, the totality of facts must be considered to resolve the issue of state action.

[8] Plaintiff's arguments to the contrary are supported only by speculation as to what may have happened absent Ramsey's involvement.

fact, which would seemingly support a finding of state action, is not present in this case. There is no evidence that Ramsey affirmatively instructed the repo man to hook the Vehicle to the tow truck. For all these reasons, the Court finds Plaintiff has failed to show the state action needed to support a § 1983 claim. Consequently, Ramsey is entitled to summary judgment on Count III.

### B. Qualified Immunity

Even if Plaintiff had presented sufficient evidence of state action, Ramsey argues he is entitled to qualified immunity. "[S]tate actors, such as police officers, are protected from § 1983 suits by the affirmative defense of qualified immunity." *Waters*, 921 F.3d at 734. Qualified immunity gives police officers "breathing room to make reasonable but mistaken judgments, and to protect all but the plainly incompetent or those who knowingly violate the law." *Dollar Loan Ctr. of South Dakota, LLC v. Afdahl*, 933 F.3d 1019, 1026 (8th Cir. 2019) (cleaned up).

To determine whether a police officer is entitled to qualified immunity, a court must conduct "the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). Either step may be considered first, and "[i]f the answer to either question is no, then the officials are entitled to qualified immunity." *Schaffer v. Beringer*, 842 F.3d 585, 591 (8th Cir. 2016) (cleaned up).

For the reasons discussed above, Plaintiff has failed to present sufficient evidence that his constitutional rights were violated as a result of state action. As a result, Ramsey is entitled to summary judgment under step one of the qualified immunity analysis. In the alternative, the record and applicable case law shows that Ramsey is also entitled to summary judgment under step two.

In *Carpenter*, the court held that even if Moore had shown a constitutional violation through state action, "[i]t was not clearly established that the officers['] conduct under the precise circumstances of this case would amount to state action[.]" *Carpenter*, 404 F.3d at 1046. *Carpenter* explained that:

> The law in this area is particularly fact-sensitive, and complicated. The officers were required to make a close decision in the midst of a repossession fracas and could not have determined they were becoming so entangled in Jackson's private self-help remedy that they could be held liable under § 1983. The officers had good evidence that Jackson had an ownership interest in the boat and needed to diffuse the volatile situation, which necessarily resulted in one of the parties possessing the property when the public peace was restored. Because it would not be clear to a reasonable officer that his conduct was unlawful in the situation confronted here, [the] officers . . . are protected by qualified immunity.

*Id.* at 1046-47 (internal citations and quotation marks omitted).

The same analysis and conclusion applies to this case. When Ramsey arrived at the scene, the Vehicle was already attached to the tow truck and lifted in the air. *See, e.g., Thompson v. First State Bank of Fertile*, 709 N.W.2d 307, 311 (Minn. Ct. App. 2006) (recognizing that "the repossession was complete when the wheels were lifted from the ground").[9] Ramsey reviewed paperwork provided by the repo man and believed the repossession was legitimate. Ramsey gave Plaintiff an opportunity to explain his side of the story and Plaintiff admitted that he was behind on his payments. The record does not show the repo man had taken steps to cease the repossession, or that he was willing to unhook the Vehicle and leave without it. Meanwhile, Plaintiff refused to exit the Vehicle and claims he would have continued to physically protest and impede the repossession. (Doc. #75, p. 18.)

---

[9] Viewing the facts in the light most favorable to Plaintiff, *Thompson* is distinguishable insofar as the plaintiff in that case objected after the wheels were lifted off the ground. Here, Plaintiff contends he entered the Vehicle before it was hooked and lifted by the tow truck. However, none of the officers, including Ramsey, were present when the Vehicle was hooked and lifted, and did not see when Plaintiff entered the Vehicle. From Ramsey's perspective, he only observed Plaintiff sitting in the Vehicle after it had been hooked and lifted.

Under all these circumstances, Ramsey "had good evidence" the repossession was lawful and "needed to diffuse the volatile situation, which necessarily resulted in one of the parties possessing the property when the public peace was restored." *Carpenter*, 404 F.3d at 1046-47. The Court agrees with Ramsey that the facts of this case fall "outside the realm of informing any objectively reasonable officer that by not forcing the tow truck operator to lower the vehicle, or by not sitting by indefinitely, that this would result in a constitutional right[s] violation to Plaintiff, despite his admission that he had missed payments and where he did not provide any other explanation for contesting the matter." (Doc. #80, p. 43.) "Because it would not be clear to a reasonable officer that his conduct" would constitute state action or result in a constitutional violation, Ramsey is entitled to qualified immunity. *Carpenter*, 404 F.3d at 1046-47. Consequently, the Court grants Ramsey's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) Defendant Benjamin Ramsey's Motion for Summary Judgment (Doc. #60) is GRANTED, and Count III is DISMISSED WITH PREJUDICE; and

(2) Plaintiff's Motion for Partial Summary Judgment as to Liability (Doc. #62) is DENIED; and

(3) Plaintiff's Motion to Exclude Defendant's Expert Testimony (Doc. #65) is DENIED AS MOOT; and

(4) Defendant's Motion to Strike Both Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Suggestions in Support of Motion for Partial Summary Judgment (Doc. #69) is DENIED for the reasons stated by Plaintiff and because the Court considered those filings in resolving the parties' respective motions for summary judgment; and

(5) the Clerk of Court shall mark this case as CLOSED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: October 12, 2021